UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| BROC T. WALTERMEYER, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ROBERT HAZLEWOOD, Warden, and ) <br> DIANE L. KISTLER, ) <br> Health Services Doctor, ) <br> ) <br> Defendants. ) | Civil No. 19-cv-233-LM |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

I.   INTRODUCTION.

Plaintiff's claim against former Warden Robert Hazlewood and Diane L. Kistler should be dismissed because of the Supreme Court's recent decision in *Egbert v. Boule*, 142 S. Ct. 1793 (2022), which clarifies the Court's *Bivens* framework. Although extending *Bivens* has long been a "disfavored judicial activity," *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017), *Egbert* emphasized that a *Bivens* claim is unavailable "in all but the most unusual circumstances." *Egbert*, 142 S. Ct. at 1800. Even cases involving "parallel circumstances" to the three, decades-old cases where the Court recognized a *Bivens* remedy warrant rigorous scrutiny under the Court's modern "analytic framework" for implied causes of action. *Id.* at 1809. Plaintiff's claim cannot survive that analysis. His *Bivens* allegation presents a context that diverges meaningfully from past *Bivens* cases – including *Carlson v. Green*, 446 U.S. 14 (1980) – and raises multiple special factors suggesting that Congress is better equipped than the Judiciary to create this type of remedy. Consequently, Plaintiff's claim against the defendants must be dismissed as it is not cognizable in a *Bivens* action. Fed. R. Civ. P. 12(b)(6).

II. FACTS.

On April 13, 2023, the Magistrate Judge issued a Report and Recommendation construing the factual assertions in Document Numbers ("DN") 1, 12, 13, 20, 25, 27, and 28, to comprise Plaintiff's third amended complaint. DN 32. As construed by the Court, the sole count remaining in this case is Claim Three, as follows:

> Warden Robert Hazlewood and Dr. Diane Kistler violated Mr. Waltermeyer's Eighth Amendment rights, in that they have failed to provide needed medical care and treatment in response to Mr. Waltermeyer's complaints of excruciating pain in his knees, limiting Mr. Waltermeyer's movement, creating the necessity for steroid injections, and causing permanent physical damage which will require knee replacements.

DN 32. Because Plaintiff's *Bivens* claim arises in a new context and special factors counsel hesitation, the claim should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

III. PLAINTIFF'S *BIVENS* CLAIM IS BARRED.

A. *Egbert* and the *Bivens* Framework

The ability to sue a federal employee individually under the Constitution is "not an automatic entitlement." *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007). Indeed, there are only three, decades-old cases in which the Supreme Court has recognized such a remedy: *Bivens*, 40 U.S. 388; *Davis v. Passman*, 442 U.S. 228 (1979); and *Carlson*, 446 U.S. 14 (1980). "After those decisions, however, the Court changed course." *Hernandez v. Mesa*, 140 S. Ct. 735, 741 (2020). "[E]xpanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Abbasi*, 137 S. Ct. at 1857 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)).

Consistent with the Supreme Court's disapproval of expanding *Bivens*, the Court's pre-*Egbert* standard for assessing a *Bivens* claim was unforgiving. "First, [the court had to] ask whether the case present[ed] 'a new *Bivens* context' – i.e., [was] it 'meaningful[ly]' different from the three cases in which the Court has implied a damages action." *Egbert*, 142 S. Ct. at

2

1803 (quoting *Abbasi*, 137 S. Ct. at 1859-60). "Second, if a claim [arose] in a new context, a *Bivens* remedy [was] unavailable if there [were] 'special factors' indicating that the Judiciary is *at least arguably* less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Id.* (quoting *Abbasi*, 137 S. Ct. at 1858) (emphasis added). Indeed, "the Supreme Court [had] cautioned lower courts not to imply causes of action under *Bivens* where no statutory authority exists, explaining that such a task is better fit for Congress." *Bivens v. Blaike*, No. 21-cv-00783-PAB-NYW, 2022 WL 2158984, at *3 (D. Colo. June 15, 2022) (citing *Abbasi*, 137 S. Ct. at 1856-57).

Since then, however, "*Egbert* clarified this analytical framework in a manner that made it even more rigorous, in effect making it significantly more unlikely that an implied cause of action will be recognized." *Washington v. Fed. Bureau of Prisons*, Civil Action No. 5:16-3913-BHH, 2022 WL 3701577, at *4 (D.S.C. Aug. 26, 2022). As the Supreme Court explained in *Egbert*, the two steps of the *Bivens* analysis "often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Egbert*, 142 S. Ct. at 1803. "The Court instructed that if there is 'even a single' rational reason to defer to Congress to create a remedy for relief, 'a court may not recognize a *Bivens* remedy.'" *Washington*, 2022 WL 3701577, at *4 (quoting *Egbert*, 142 S. Ct. at 1803). "Moreover, *Egbert* rejected the petitioner's Fourth Amendment claim despite its extremely close factual and legal parallels with *Bivens* itself, affirming that the plaintiff's Fourth Amendment claim presented a new *Bivens* context despite the fact that, as in *Bivens*, the alleged excessive force arose in the setting of the plaintiff's arrest by a law enforcement officer." *Id.* (citing *Egbert*, 142 S. Ct. at 1800-01, 1804).

*Egbert* issued other clarifications to the *Bivens* framework that multiply the obstacles a *Bivens* claimant faces. First, *Egbert* made clear that "recognizing a *Bivens* cause of action is an extraordinary act," and courts thus "have a concomitant responsibility to evaluate any grounds that counsel against *Bivens* relief" no matter when a defendant raises the issue. *Egbert*, 142 S. Ct. at 1806 n.3 (quotations omitted). Likewise, the Court held that a "new context arises when there are 'potential special factors that previous *Bivens* cases did not consider.'" *Id.* at 1803 (quoting *Abbasi*, 137 S. Ct. at 1860). Moreover, *Bivens*, *Passman*, and *Carlson* "pre-date[ ] [the Court's] current approach to implied causes of action" and therefore, "carr[y] little weight." *Id.* at 1808. This means "a plaintiff cannot justify a *Bivens* extension based on 'parallel circumstances' with *Bivens*, *Passman*, or *Carlson* unless he also satisfies the 'analytic framework' prescribed by the last four decades of intervening case law." *Id.* at 1809 (quoting *Abbasi*, 137 S. Ct. at 1859). Finally, the Court held that Congress's provision of "alternative remedies for aggrieved parties" in a plaintiff's position can "independently foreclose a *Bivens* action[.]" *Id.* at 1806.

Collectively, these principles impart that courts must always analyze whether a *Bivens* claim should be allowed to proceed, including by considering special factors regarding separation of powers. A *Bivens* remedy therefore is unavailable "in most every case." *Egbert*, 142 S. Ct. at 1803; *see also id.* at 1810 (Gorsuch, J., concurring) ("If the costs and benefits do not justify a new *Bivens* action on facts so analogous to *Bivens* itself, it's hard to see how they ever could. And if the only question is whether a court is 'better equipped' than Congress to weigh the value of a new cause of action, surely the right answer will always be no."); *Silva v. United States*, No. 21-1008, 2022 WL 3591107, at *1 (10th Cir. Aug. 1, 2022) ("The Supreme Court's message could not be clearer – lower courts expand *Bivens* claims at their own peril.").

This case does not present the "unusual circumstances" in which a *Bivens* claim should be allowed to proceed. *Egbert*, 142 S. Ct. at 1800. As such, dismissal is warranted whether this Court analyzes Plaintiff's claim under the two-step approach, or simply asks the essential question of whether Congress is better equipped than the Judiciary to create this type of remedy.

B.     Plaintiff's Claim Arises in a New *Bivens* Context

Plaintiff's *Bivens* claim presents a new context both because it diverges factually from the Court's three *Bivens* cases and because it raises potential special factors that the Court has not considered in the past. To constitute a new context, a case need only be "different in a meaningful way from previous *Bivens* cases decided by th[e] [Supreme] Court." *Abbasi*, 137 S. Ct. at 1843, 1859. The Court's understanding of a new context "is broad," *Hernandez*, 140 S. Ct. at 743, and the analysis is "easily satisfied" even for claims that have "significant parallels" to one of the three previously recognized *Bivens* contexts. *Abbasi*, 137 S. Ct. at 1865. In *Egbert*, for example, the Court affirmed the Ninth Circuit's holding that the respondent's Fourth Amendment claim presented a new context even though, as in *Bivens*, he alleged that a federal law enforcement agent entered his property without a warrant and unlawfully seized him. *Egbert*, 142 S. Ct. 1793. After *Egbert*, courts cannot assume a *Bivens* claim can proceed without a special factors analysis regardless of how similar to prior *Bivens* cases it is. *See id.* at 1810 (Gorsuch, J., concurring) ("Candidly, I struggle to see how this set of facts differs meaningfully from those in *Bivens* itself.").

Here, Plaintiff's claim clearly bears no resemblance to *Bivens*, 403 U.S. 388 (Fourth Amendment claim for warrantless search and seizure at the plaintiff's home), or *Passman*, 442 U.S. 228 (Fifth Amendment due process claim for sex discrimination in employment context). *Carlson* is the only prior *Bivens* case with any similarities to this one. *See* 446 U.S. 14. But

5

while *Carlson* also involved an Eighth Amendment claim for deliberate indifference to serious medical needs, *id.* at 16 n.1, "[a] claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernandez*, 140 S. Ct. at 743; *see also Abbasi*, 137 S. Ct. at 1864 (cases involving the same "constitutional right" and "mechanism of injury" as a prior *Bivens* case can still present a new context). Aside from the overarching constitutional theory at issue, this case shares little in common with *Carlson*.

In *Carlson*, the plaintiff was the estate of an inmate who died after prison officials "kept him in [an inadequate] facility against the advice of doctors, failed to give him competent medical attention for some eight hours after he had an asthmatic attack, administered contra-indicated drugs which made his attack more severe, attempted to use a respirator known to be inoperative which further impeded his breathing, and delayed for too long a time his transfer to an outside hospital." *Carlson*, 446 U.S. at 16 n.1. In other words, *Carlson* focused on a specific incident of gross and fatal medical incompetence. Here, in contrast, the *Bivens* claim turns on allegations that the defendants failed to provide Plaintiff needed medical care and treatment in response to his complaints of knee pain, which limited his movement and required steroid injections. DN 32, at 10. None of these allegations involve a life-threatening condition or an emergency as in *Carlson*. 446 U.S. at 16, n.1.

Recently, in *Washington*, the district court held that plaintiff's deliberate indifference claims arose in a "new *Bivens* context" even though the claims were "parallel" to "those in *Carlson* to the degree they [were] brought under the Eighth Amendment and relate[d] to medical care in the prison setting generally." *Washington*, 2022 WL 3701577, at *5. In *Washington*, as is the case here, the plaintiff's claim arose from "a long term and ongoing course of medical

treatment" of a "chronic, non-fatal condition" rather than from a medical emergency of the kind that was at issue in *Carlson. Id.* The plaintiff in *Washington* suffered from vision loss and alleged that BOP medical staff ignored the instructions of his treating ophthalmologists, "failed to properly administer" his medications, "prevented [him] from accessing his medications and other medically necessary items," refused to administer treatment, and ignored his prescriptions. *Id.* at * 1-2. In short, the plaintiff in *Washington* – like Plaintiff here – alleged that BOP medical staff deficiently treated his chronic condition by refusing to render proper treatment. The court in *Washington* had no difficulty concluding that the *Bivens* claim arose in a "new context" distinct from *Carlson. Id.* at *5. Just as in *Washington*, if *Egbert* presented a new context compared to *Bivens*, then the conclusion is inescapable that the facts here present a new context compared to *Carlson. See id.*

*Washington* is only the most recent example of courts finding a new context in Eighth Amendment cases where the medical condition and care at issue were different from *Carlson*. *See, e.g.,* Order, *Armour v. Depaola*, No. 18cv3728, DN 56 at 1, 3 (N.D. Ill. Nov. 17, 2020) (new context where plaintiff alleged defendant prevented him from receiving his medication); *Moreno v. Hoey*, No. 1:19-2756, 2020 WL 5986214, at 1, 5 (D.S.C. Apr.22, 2020), *report and recommendation adopted by* 2020 WL 3638126 (D.S.C. July 6, 2020) (observing that alleged deliberate indifference to "sleep apnea, back pain, prostate issues, and a lump on [the plaintiff's] testicle" may present different context from *Carlson*, but dismissing on other grounds); *Martinez v. U.S. Bureau of Prisons*, 5:15cv2160, 2019 WL 5432052, at *8 (C.D. Cal. Aug. 20, 2019), *report and recommendation adopted by* 2019 WL 5424414 (C.D. Cal. Oct. 22, 2019) (failure to treat hypertension was "demonstrably different in kind and severity" from *Carlson*); *Gonzalez v. Hasty*, 269 F. Supp. 3d 45, 64-65 (E.D.N.Y. 2017) *aff'd*, 755 F. App'x 67 (2d Cir. 2018) (new

7

context where plaintiff alleged that officials failed to provide dental hygiene supplies and supportive shoes). The same result is warranted here.

The factual differences between Plaintiff's allegations and *Carlson* are "meaningful" on their own, but they also raise "potential special factors" that were never examined in that case. *See Egbert*, 142 S. Ct. at 1803. As in *Washington*, Plaintiff's "*Bivens* claims do not involve a medical emergency, as did *Carlson*, but rather focus on a long term and ongoing course of medical treatment of Plaintiff's chronic, non-fatal condition." *Washington*, 2022 WL 3701577, at *5. "This difference is significant for multiple reasons, including that administrative and injunctive relief would have [had] a completely different application to Plaintiff's claims than to the claims in *Carlson*, where the failure to properly address a medical emergency proved fatal." *Id.* "Whereas the Court in *Carlson* fashioned a *Bivens*-type remedy to make right a grave constitutional wrong, Plaintiff's *Bivens* claims here risk transforming this Court into an *ad hoc* medical review board tasked with deciding, with little to no judicial guidance, which medical errors, if any, cross the threshold into constitutional injury." *Id.* In other words, because Plaintiff's complaint focuses on treatment of chronic conditions and not a life-threatening emergency, his alleged injury was amenable to redress under the BOP's Administrative Remedy Program ("ARP"), *see* 28 C.F.R. § 542.10 *et seq.*, and injunctive relief in a way that the injury in *Carlson* was not. This "potential special factor" is sufficient to render this case as a "new" *Bivens* context. If that were not enough, when *Carlson* was decided in 1980, Congress had not passed the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e, which aimed to curb the number of civil claims filed by inmates. The existence of these potential special factors, which *Carlson* never considered, warrant a full analysis of whether it would offend separation of

powers principles to authorize the type of *Bivens* claim that Plaintiff proposes here. *See Egbert*, 142 S. Ct. at 1808.

In short, "[i]t is of no moment that Plaintiff's claim[ ] parallel[s] those in *Carlson* to the degree they are brought under the Eighth Amendment and relate to medical care in the prison setting generally." *Washington*, 2022 WL 3701577, at *5. "After *Egbert*, such broad similarities with ... *Carlson* are not sufficient on their own to authorize a claim." *Id.*

C. Special Factors Counsel Against Allowing Plaintiff's *Bivens* Claim to Proceed.

Even if the Court views the allegations in this case as "closely resembl[ing]" those in *Carlson*, *Egbert* still demands that the Court "conduct a special factors analysis" because *Carlson* "predates [the Supreme Court's] current approach to implied causes of action." *Egbert*, 142 S. Ct. at 1808. The special factors inquiry is broad ranging and simply asks "whether there is *any* rational reason (even one) to think that *Congress* is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Id.* at 1805 (emphasis in original) (quoting *Abbasi*, 137 S. Ct. at 1858). "[S]eparation-of-powers principles are or should be central to the analysis." *Abbasi*, 137 S. Ct. at 1857. Here, "special factors" indicate that Congress is better suited than the Judiciary to "weigh the costs and benefits" of creating a new damages remedy. *Egbert*, 142 S. Ct. at 1805 (quoting *Abbasi*, 137 S. Ct. at 1858); *see also Silva*, 2022 WL 3591107, at *4 ("[W]e are left in no doubt that expanding *Bivens* is not just 'a disfavored judicial activity,' it is an action that is impermissible in virtually all circumstances." (citations omitted) (quoting *Egbert*, 142 S. Ct. at 1803)).

    1.    Congress is Better Positioned than the Judiciary to Fashion Remedies Concerning Chronic Medical Care in Federal Prisons

One special factor preventing a *Bivens* claim here is that "Congress is better positioned to create remedies in the context of chronic medical care in federal prisons." *Washington*, 2022

WL 3701577, at *6. "The provision of chronic medical care is a specialized activity requiring a high degree of training and qualification." *Id.* "In the prison context, the provision of such care is made all the more multifaceted because it must coincide with the security demands and inherent limitations of the custody setting." *Id.* "Given this constellation of circumstances, 'the Judiciary is comparatively ill suited to decide whether a damages remedy against any [BOP medical provider] is appropriate.'" *Id.* (quoting *Egbert*, 142 S. Ct. at 1805).

> 2. Alternative Processes Exist for Correcting Ongoing Issues with Custodial Medical Care, Compensating for Past Injuries From Inadequate Care, and Safeguarding the Quality of Care at BOP Facilities.

Both the Executive and Legislative Branches have "provided alternative remedies for aggrieved parties in [Plaintiff's] position that independently foreclose a *Bivens* action here." *Egbert*, 142 S. Ct. at 1806. First, the BOP's ARP allows inmates who believe they are receiving inadequate medical care to file a grievance to correct the issue. *See* 28 C.F.R. § 542.10; *see also Egbert*, 142 S. Ct. at 1806 (holding that the U.S. Border Patrol's grievance procedure "independently foreclose[d] a *Bivens* action" and citing BOP's ARP as a special factor that made a *Bivens* claim unavailable in *Correctional Svcs. Corp. v. Malesko*, 534 U.S. 61 (2001)). "The [ARP] process is substantial; it contains its own statutes of limitations, filing procedures, and appeals process .... And prisoners may retain attorneys for assistance with the process." *Callahan v. Fed. Bureau of Prisons*, 965 F.3d 520, 524 (6th Cir. 2020). For situations determined to "threaten[ ] the inmate's immediate health or welfare," the warden must respond to a grievance within three days. 28 C.F.R. § 542.18. Notably, with respect to federal incarcerated persons, by adding an administrative exhaustion requirement to the PLRA, *see* 42 U.S.C. § 1997e(a), Congress has incorporated the ARP into its scheme for resolving inmate disputes and decreasing the amount of litigation emanating from prisons. The ARP thus bears

the endorsement of both the BOP and Congress as the proper means of addressing the complaints of federal inmates.

The Federal Tort Claims Act ("FTCA") provides another process that allows inmates to remedy past harm related to medical care by seeking damages from the United States. In fact, a negligence claim under the FTCA will often provide an inmate's best option to recover damages. While *Bivens* found that the interests protected by "state laws regulating trespass and the invasion of privacy" were "inconsistent or even hostile" to the Fourth Amendment's protections, 403 U.S. at 394, the Court explained in *Malesko* that "such logic does not apply" when a plaintiff can assert negligence in lieu of an Eighth Amendment claim. 534 U.S. at 73-74. Indeed, "the heightened 'deliberate indifference' standard of Eighth Amendment liability … would make it considerably more difficult for [a plaintiff] to prevail than on a theory of ordinary negligence." *Id.* at 73 (internal citation omitted). Between the ARP and the FTCA, inmates in Plaintiff's position have multiple alternatives to protect their interests in obtaining adequate medical care.

Finally, in addition to these inmate-initiated processes, the government has internal processes for disciplining employee misconduct and safeguarding the quality of patient care. Employees of the Department of Justice, which includes the BOP, are required to report "waste, fraud, abuse, and corruption," 28 C.F.R. § 2635.101(b)(11), and "serious administrative misconduct" by other employees. *Id.* at § 45.11. Violations can lead to "corrective or disciplinary action" by the agency. *Id.* at § 2635.106. With respect to medical care specifically, the BOP has also developed policies to "[e]valuate and improve health care delivery systems and clinical outcomes," Federal Bureau of Prisons, *Health Services Quality Improvement* (Jan. 15, 2005), https://www.bop.gov/policy/progstat/6013_001.pdf, and "establish procedures for primary source credential verification, and granting of clinical privileges or practice agreements

11

for health care providers at Bureau institutions." *Health Care Provider Credential Verification, Privileges, and Practice Agreement Program* (Oct. 12, 2016), https://www.bop.gov/policy/progstat/6027_002.pdf. Considering the many processes protecting the interests of inmates in adequate medical care, authorizing a *Bivens* remedy here would be unwarranted.

        3.      Congressional Action in the Context of Prison Life has been "Frequent and Intense," Yet Congress has not Created a Damages Remedy for Federal Inmates and has Delegated Authority Over Administration of Federal Prisons and Discipline of BOP Employees to the Executive.

The Supreme Court has explained that special factors may bar a new *Bivens* cause of action if congressional interest in the relevant area has been "frequent and intense," yet Congress never created an individual-capacity damages remedy, suggesting that Congress may disfavor the Judiciary creating one itself. *See Abbasi*, 137 S. Ct. at 1862 (quoting *Schweiker v. Chilicky*, 487 U.S. 412, 425 (1988) (declining to extend *Bivens* remedy for unconstitutional conditions of confinement where Congress had passed significant anti-terrorism legislation after the September 11 attacks without creating a damages remedy)). There is even greater cause for hesitation if Congress has also "designed its regulatory authority in a guarded way" by granting discretion over decision-making to an agency. *Id.* at 1858 (citing examples).

"Congress has legislated extensively regarding the rights and protections of incarcerated persons but has never created the remedy that Plaintiff now seeks from this Court." *Washington*, 2022 WL 3701577, at *7. "That counsels hesitation." *Id.* "When Congress has legislated extensively on a topic but declined to create a damages remedy, 'the silence of Congress is relevant' and suggests an intent *not* to create such a remedy." *Id.* (emphasis in original) (quoting *Abbasi*, 137 S. Ct. at 1862). Relatedly, the decision of Congress to delegate authority to an agency and insulate the agency's decision-making from judicial review also "mak[es] it less

likely that Congress would want the Judiciary to interfere) by authorizing a *Bivens* remedy. *Abbasi*, 137 S. Ct. at 1858.

"Numerous aspects of the maintenance of federal prison institutions and the treatment, rights and grievance procedures of persons incarcerated there are regulated by statute, including the provision of medical care." *Washington*, 2022 WL 3701577, at *7. "For example, the BOP is required to place prisoners in facilities where 'the prisoner's mental and medical health needs' can be met, 18 U.SC. § 3621, and to 'provide for the safekeeping, care, and subsistence' of all prisoners, 18 U.S.C. § 4042(a)(2)." *Id.* "But despite mandating adequate medical care, Congress has never opted to create an individual capacity cause of action that permits federal prisoners [to] sue BOP healthcare providers when their services are perceived to fall short." *Id.* "Instead, Congress has delegated broad authority to the Attorney General over '[t]he control and management of Federal penal and correctional institutions.'" *Id.* (quoting 18 U.S.C. § 4001(b)(1)).

"And, rather than expand the scope of prisoner litigation, Congress passed the PLRA in 1995 to 'limit litigation brought by prisoners.'" *Washington*, 2022 WL 3701577, at *7 (quoting *Montcalm Pub. Corp. v. Commonwealth of Va.*, 199 F.3d 168, 171 (4th Cir. 1999)). Indeed, "Congress paid close attention to inmate constitutional claims when it enacted the [PLRA] of 1995" but did not create a "standalone damages remedy against federal jailers." *Callahan*, 965 F.3d at 524 (quoting *Abbasi*, 137 S. Ct. at 1865). "Congress has thus had opportunities to authorize Plaintiff's supposed Bivens" claim "when legislating on multiple subjects – including prison medical care and prisoner litigation – but has always declined." *Washington*, 2022 WL 3701577, at *7. "This suggests that it would be inappropriate for this Court to act in Congress's place by implying a remedy." *Id.*

IV.  CONCLUSION.

For these reasons, the Court should grant this motion, dismiss Plaintiff's *Bivens* claims, and enter judgment in Defendants' favor.

                    Respectfully submitted,

                    JANE E. YOUNG
                    United States Attorney

                    By:  /s/ Michael McCormack
                    Michael McCormack
                    Assistant U.S. Attorney, NH Bar No. 16470
                    U.S. Attorney's Office
                    53 Pleasant Street
                    Concord, NH  03301
                    (603) 225-1552

Dated:  May 15, 2023             michael.mccormack2@usdoj.gov