UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Broc T. Waltermeyer

    v.                                                          Case No. 19-cv-233-LM

Warden, FCI Berlin, et al.

## REPORT AND RECOMMENDATION
## ON DEFENDANTS' MOTION TO DISMISS

Plaintiff Brock T. Waltermeyer ("Waltermeyer"), who is proceeding pro se, alleges that the defendants deprived him of necessary medical care, in violation of his Eighth Amendment rights, while he was incarcerated at the Federal Correctional Institution in Berlin, New Hampshire ("FCI Berlin") during the period from May 3, 2018 to July 25, 2019. By his third amended complaint, Waltermeyer has asserted claims against the former Warden of FCI Berlin, Robert Hazelwood ("Hazelwood"), and FCI Berlin physician, Diane L. Kistler ("Kistler"), under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).[1] Waltermeyer is seeking to hold Hazelwood and Kistler liable in their personal capacities for damages he suffered as a result of the allegedly unconstitutional conduct.

The matter is before the court on the "Defendants' Motion to Dismiss" (Doc. No. 33). Therein, the defendants are seeking dismissal of Waltermeyer's Eighth Amendment claims against them, pursuant to Federal Rule of Civil Procedure 12(b)(6), on the grounds that those claims are not cognizable under Bivens. Relying on the Supreme Court's most recent application of the

---

[1] As described in further detail below, Bivens allows plaintiffs to vindicate certain constitutionally protected rights through a private cause of action for damages against federal officials in their individual capacities." DeMayo v. Nugent, 517 F.3d 11, 14 (1st Cir. 2008).

Bivens doctrine in Egbert v. Boule, 596 U.S. 482 (2022), the defendants argue that Waltermeyer's claims are barred because they seek to apply Bivens in a new context outside the limited situations in which the Supreme Court has been willing to imply a damages action against federal actors for constitutional violations, and because there are "special factors" that counsel against the extension of Bivens in this case. The plaintiff disputes the defendants' assertion that his claims constitute an expansion of Bivens or that dismissal is appropriate under the applicable case law. While the question is a close one, this court finds that in light of the unsettled nature of the relevant case law that has been decided since Egbert, as well as the early stage of the proceedings in this case, the issues raised by the defendants' motion would be better resolved after development of the factual record. Therefore, this court recommends that the defendants' motion to dismiss be DENIED without prejudice to the defendants' ability to raise their arguments again at a later point in the litigation.

## BACKGROUND

When ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court must accept as true all well-pleaded facts and give the plaintiff the benefit of all reasonable inferences. See Cooperman v. Individual, Inc., 171 F.3d 43, 46 (1st Cir. 1999). Where, as here, the plaintiff is proceeding pro se, the court must construe the plaintiff's allegations liberally. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (explaining that documents filed pro se must "be liberally construed" (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). In the instant case, the court has construed the allegations asserted by the plaintiff in Document Nos. 1, 12, 13, 20, 25, 27 and 28 as comprising Waltermeyer's third amended complaint ("TAC"), which is the operative complaint in this case. Doc. No. 32 at 1. Therein, Waltermeyer alleges that during the time he was incarcerated at FCI Berlin from May 3, 2018 through July 25, 2019, he suffered extreme

chronic pain in both knees as a result of degenerative bone disease, and that his pain interfered with his ability to walk, sit and sleep. Id. at 6. He also alleges that although he received medical care and treatment, as well as certain accommodations such as access to a low bunk and use of a cane, the treatment failed to correct his condition and was ineffective at addressing his pain. Id. at 6-7. Furthermore, Waltermeyer contends that he has suffered lasting physical harm as a result of the inadequate medical care he received during his confinement at FCI Berlin. See id. at 10. By the sole count remaining in his TAC, Waltermeyer asserts that

> Warden Robert Hazlewood and Dr. Diane Kistler violated Mr. Waltermeyer's Eighth Amendment rights, in that they have failed to provide needed medical care and treatment in response to Mr. Waltermeyer's complaints of excruciating pain in his knees, limiting Mr. Waltermeyer's movement, creating the necessity for steroid injections, and causing permanent physical damage which will require knee replacements.

See id. at 10, 17-18; see also Doc. No. 34 (approving Doc. No. 32). The court has construed his claims as arising under Bivens. Doc. No. 32 at 1.

## STANDARD OF REVIEW

The defendants have moved to dismiss the TAC pursuant to Fed. R. Civ. P. 12(b)(6). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. While this standard does not impose "a 'probability requirement,'" it requires "more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556).

As described above, pro se litigants like Waltermeyer are entitled to have their complaints construed liberally. See Erickson, 551 U.S. at 94. "However, pro se status does not insulate a

3

party from complying with procedural and substantive law." Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997). "[E]ven a pro se plaintiff is required 'to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" Adams v. Stephenson, 116 F.3d 464 (1st Cir. 1997) (unpublished table decision) (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)).

## **DISCUSSION**

The defendants argue that the court must dismiss Waltermeyer's claims against them because they are not actionable under the Bivens doctrine, as clarified in the Supreme Court's recent decision in Egbert. In particular, the defendants argue that the plaintiff's claims are barred because, under Egbert, his allegations "present[ ] a context that diverges meaningfully from past *Bivens* cases" and implicate "multiple special factors suggesting that Congress is better equipped than the Judiciary to create this type of remedy." Doc. No. 33-1 at 1. Waltermeyer disputes these assertions. He argues that his claims do not arise in a new context because they are similar to the Bivens claim that the Supreme Court recognized in Carlson v. Green, 446 U.S. 14 (1980). Doc. No. 36 at 3. He also argues that the defendants' arguments are based on "an absurdly narrow reading of Egbert" and that the court should not consider the defendants' "special factors" argument because his Eighth Amendment claims "do[ ] not diverge substantially from Bivens" and its progeny. Id. at 4-5. As detailed below, courts around the country that have considered similar arguments, including district courts within the First Circuit, have been divided on their application of Egbert, and it is likely the First Circuit will have an opportunity to address some of these issues in the foreseeable future. Consequently, and in light of the early stage of this litigation, this court recommends that the District Judge deny the motion to dismiss and allow the defendants to present their arguments again following discovery.

The Bivens Doctrine

Some understanding of Bivens and the development of the case law following Bivens is necessary to understand the parties' arguments. Therefore, it is appropriate to begin with a brief discussion of Bivens and the development of the law through Egbert.

Congress has never enacted a law permitting a damages remedy for plaintiffs who allege that a federal official violated their constitutional rights.[2] In 1971, the Supreme Court decided Bivens, a case in which "federal agents … allegedly manacled the plaintiff and threatened his family while arresting him for narcotics violations." Quinones-Pimentel v. Cannon, 85 F.4th 63, 68 (1st Cir. 2023) (quoting Egbert, 596 U.S. at 490). There, "[t]he Supreme Court 'held that a Fourth Amendment violation by federal agents, acting under color of governmental authority, gave rise to [an implied] cause of action for money damages against those agents in their individual capacities.'" Id. at 68-69 (second alteration in original) (quoting González v. Vélez, 864 F.3d 45, 52 (1st Cir. 2017)). "The basis for recognizing such a new constitutional tort and, thus, allowing such suits to proceed, [was] … derived from the Constitution itself." González, 864 F.3d at 52.

Since Bivens, the Supreme Court has only extended this implied cause of action in two additional contexts. See Egbert, 596 U.S. at 490-91. First, in Davis v. Passman, 442 U.S. 228 (1979), "the Supreme Court allowed a damages action pursuant to the Fifth Amendment's Equal Protection Clause against a Congressperson for sex discrimination towards a member of their staff." Quinones-Pimentel, 85 F.4th at 69. Second, in Carlson v. Green, 446 U.S. 14 (1980), "the Supreme Court extended Bivens to include an Eighth Amendment violation in which federal prison officials failed to provide adequate medical treatment for a prisoner's asthma, resulting in his

---

[2] In 1871, Congress enacted a statute that was later codified as 42 U.S.C. § 1983. Ziglar v. Abbasi, 582 U.S. 120, 130 (2017). That statute "entitles an injured person to money damages if a state official violates his or her constitutional rights." Id. However, "Congress did not create an analogous statute for federal officials." Id.

death." Id. After Carlson, however, the Supreme Court changed course. Since that case was decided, the Court "has 'consistently refused to extend *Bivens* to any new context or new category of defendants.'" Ziglar v. Abbasi, 582 U.S. 120, 135 (2017) (quoting Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 68 (2001)).

The Supreme's Court's reluctance to imply a cause of action outside the contexts presented in Bivens, Davis and Carlson stems from its increasing concern with the separation of legislative and judicial power. See Egbert, 596 U.S. at 491 ("we have come 'to appreciate more fully the tension between' judicially created causes of action and 'the Constitution's separation of legislative and judicial power.'" (quoting Hernandez v. Mesa, 589 U.S. ---, 140 S. Ct. 735, 741 (2020)). As the Court explained in Ziglar, "it is a significant step under separation-of-powers principles for a court to determine that it has the authority, under the judicial power, to create and enforce a cause of action for damages against federal officials in order to remedy a constitutional violation." Ziglar. 582 U.S. at 133. In recent cases, the Supreme Court has cautioned that "recognizing a cause of action under *Bivens* is 'a disfavored judicial activity[,]'" and "'if there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy[,] the courts must refrain from creating [it].'" Egbert, 596 U.S. at 491 (alterations in original) (quoting Ziglar, 582 U.S. at 137). Significantly, however, "the Supreme Court has never overruled Bivens[.]" Quinones-Pimentel, 85 F.4th at 69. Although the Court has suggested that it "would decline to discover any implied causes of action in the Constitution" if it were to decide Bivens today, Bivens, Davis and Carlson all remain in force. See Egbert, 596 U.S. at 502.

As described in Ziglar and clarified in Egbert, the Supreme Court has established a two-step process for evaluating whether Bivens claims for damages against federal officials may proceed in a particular case. See id. at 492 ("To inform a court's analysis of a proposed *Bivens*

6

claim, our cases have framed the inquiry as proceeding in two steps."). The first step requires the court to "ask whether the case presents a new Bivens context, which boils down to whether the case is meaningfully different from Bivens, Davis, and Carlson." Quinones-Pimentel, 85 F.4th at 69. A meaningful difference may include:

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

Ziglar, 582 U.S. at 139-40. It may also include "a 'new category of defendants.'" Egbert, 596 U.S. at 492 (quoting Malesko, 534 U.S. at 68). On the other hand, the Supreme Court has "cautioned that '[s]ome differences … will be so trivial that they will not suffice to create a new Bivens context.'" Quinones-Pimentel, 85 F.4th at 70 (quoting Ziglar, 582 U.S. at 149). Therefore, "*some* degree of variation will not preclude a *Bivens* remedy." Snowden v. Henning, 72 F.4th 237, 243-44 (7th Cir. 2023) (cited with approval in Quinones-Pimentel, 85 F.4th at 70).

"If the case presents no meaningful differences (and thus no new context), the analysis ends there and relief under Bivens is available. If, however, the court decides the case does present a new Bivens context, its next and final question is whether there are any 'special factors' counseling against extending Bivens." Quinones-Pimentel, 85 F.4th at 70 (internal citation omitted) (quoting Egbert, 596 U.S. at 492). The Supreme Court has not clearly defined what is meant by "special factors" for purposes of this analysis. Id. However, there is no question that such factors include "'alternative remedial structures,' such that if Congress has already given a would-be Bivens plaintiff a way to redress the constitutional violation, the Bivens suit cannot proceed." Id. (quoting Egbert, 596 U.S. at 493). The Supreme Court has also explained that this step focuses on whether "the Judiciary is at least arguably less equipped than Congress to weigh

7

the costs and benefits of allowing a damages action to proceed. If there is even a single reason to pause before applying *Bivens* in a new context, a court may not recognize a *Bivens* remedy." Egbert, 596 U.S. at 492 (internal quotations and citations omitted).

While the Supreme Court in Egbert retained the two-step analysis, it stated that the analysis "often resolve[s] to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." Id. See also Quinones-Pimentel, 85 F.4th at 70 ("The entire analysis ultimately collapses – the Supreme Court tells us -- into a single, fundamental inquiry: 'whether there is any reason to think that Congress might be better equipped to create a damages remedy.'" (quoting Egbert, 596 U.S. at 492)). Thus, "the modern Bivens analysis involves a factual comparison to the facts of Bivens itself (or Davis, or Carlson, depending on the case), with an emphasis on avoiding any extension of Bivens to meaningfully new factual circumstances." Quinones-Pimentel, 85 F.4th at 70.

<u>Application of the Bivens Doctrine to the Instant Case</u>

As described above, this court must first consider whether Waltermeyer's claims present a new context. There is no dispute that of the three cases in which the Supreme Court has implied damages claims against federal officials for alleged violations of constitutional rights, Carlson is closest to the facts alleged here. See Doc. No. 33-1 at 5; Doc. No. 36 at 3. Indeed, Waltermeyer contends that he is not seeking to extend the Bivens doctrine in a new context because his Eighth Amendment claims are comparable to the claims presented in Carlson. Doc. No. 36 at 3. In that case, the mother of a deceased federal inmate brought claims for damages against prison officials for violations of the inmate's constitutional rights. Carlson, 446 U.S. at 16. Specifically, the plaintiff alleged that the prison officials, acting with deliberate indifference to her son's serious medical needs, failed to provide him with adequate medical care, in violation of his Eighth

8

Amendment rights, by housing him in an inadequate medical facility against the advice of his doctors, failing to treat him for hours after an asthma attack, administering contraindicated drugs that made his attack more severe, attempting to use equipment that was known to be inoperable, and delaying the inmate's transfer to an outside hospital, and that the defendants' actions and omissions resulted in her son's death. Id. at 16 n.1. The Supreme Court held that the plaintiff could maintain her suit under Bivens even though the allegations could also support a claim under the Federal Tort Claims Act ("FTCA"). Id. at 16-18.

As in Carlson, Waltermeyer has brought Eighth Amendment claims against federal prison personnel for failing to provide him with adequate medical treatment while in prison. He also contends, as did the plaintiff in Carlson, that the defendants acted with deliberate indifference to his serious medical needs. Moreover, Waltermeyer alleges that the defendants, like the defendants in Carlson, withheld necessary treatment and administered ineffective treatment for his serious medical condition. According to Waltermeyer, the defendants' conduct caused him to suffer severe pain and permanent physical harm. In short, Waltermeyer has alleged that the defendant prison officials, despite being aware of his serious medical needs, failed to take reasonable steps to respond to those needs, and that their acts and omissions resulted in significant, lasting injuries. Construing these allegations liberally, as this court must do on a motion to dismiss, supports the conclusion that the context presented in this case is not meaningfully different from Carlson. This conclusion is also supported by cases that have been decided since Egbert.[3] See, e.g., Ibuado v. Fed. Prison Atwater, No. 1:22-cv-00651-AWI-BAM (PC), 2023 WL 2312395, at *2, *4 (E.D. Cal.

---

[3] As the defendants' motion papers demonstrate, and as noted in Note 4 infra, courts around the country are divided on how close a plaintiff's allegations must be to the facts of Carlson to present a claim that is not meaningfully different than Carlson. Given these circumstances and the procedural posture of this case, this court finds the plaintiff's allegations sufficient to fall within the scope of Carlson at this juncture in the case.

Mar. 1, 2023) (finding that plaintiff's medical claim did not present a new context where plaintiff alleged that federal prison personnel failed to provide him with adequate medical treatment for pain and other side effects he suffered from his prescription medication), R&R adopted, 2023 WL 2839621 (E.D. Cal. Apr. 7, 2023); Duncan v. United States, No. 1:20-CV-1685-SEG, 2023 U.S. Dist. LEXIS 40265, at *13-15, 2023 WL 2370479, at *5-6 (N.D. Ga. Feb. 27, 2023) (finding that Bivens claims were not meaningfully different from those recognized in Carlson where plaintiff alleged that defendant prison officials violated his Eighth Amendment rights by giving him food to which he was severely allergic and refusing to provide him with a medically prescribed diet for 19 days); Foreman v. United States, No. 22-10401, 2023 U.S. Dist. LEXIS 24876, at *5-7, 2023 WL 1991561, at *2-3 (E.D. Mich. Feb. 14, 2023) (finding that plaintiff's Eighth Amendment claim against federal prison officials for deliberate indifference to his need for rehabilitative therapy following a severe case of COVID-19 was not meaningfully different from Carlson).

The defendants nevertheless argue that Waltermeyer's claims present a new context because the misconduct alleged here is different in kind and severity from Carlson. Thus, the defendants contend that "*Carlson* focused on a specific incident of gross and fatal medical incompetence" whereas the Bivens claim in this action "turns on allegations that the defendants failed to provide Plaintiff needed medical care and treatment in response to his complaints of knee pain, which limited his movement and required steroid injections." Doc. No. 33-1 at 6. They also maintain that this case is meaningfully different from Carlson because Waltermeyer has not alleged an emergency or life-threatening condition. Id.

The defendants' argument is not persuasive at this point in the litigation. As an initial matter, the defendants have cited no binding authority to show that the lack of a life-threatening condition or medical emergency constitutes a meaningful difference that creates a new context,

especially where the plaintiff has alleged that the defendants' conduct caused him to suffer excruciating pain and permanent damage.[4] Additionally, even after Egbert, "district courts around the country have permitted medical deliberate indifference claims to proceed under *Carlson* . . . without requiring an exact match to *Carlson's* facts." Duncan, 2023 U.S. Dist. LEXIS 40265, at *15, 2023 WL 2370479, at *6 (citing cases). Here, "[the plaintiff] brings an Eighth Amendment claim for deliberate indifference to a serious medical need against federal prison officials, which is the exact cause of action recognized by the Supreme Court in *Carlson*." Foreman, 2023 U.S. Dist. LEXIS 24876, at *8, 2023 WL 1991561, at *3. This court is not persuaded that more facts are required, at least at the pleading stage of the case, in order to state a claim that falls within the scope of Carlson.

Even if, as the defendants argue, the new context inquiry were to require a closer, more granular comparison to the facts of Carlson, this court would not recommend dismissal on this basis. "What makes a difference 'meaningful' is a bit unclear[.]" Quinones-Pimentel, 85 F.4th at 69. Given this uncertainty and the likelihood that discovery will reveal additional details regarding the nature and severity of the plaintiff's medical condition, and the defendants' response thereto, this court finds that the question whether the facts on which Waltermeyer has based his Eighth Amendment claims present a "new context" is best resolved on summary judgment following further development of the record.

---

[4] In support of their argument that the claims in this case are meaningfully different than Carlson, the defendants rely on cases in which district courts ruled that Eighth Amendment claims presented a new context where the medical condition and treatment at issue were different from Carlson. See Doc. No. 33-1 at 6-8. However, none of those cases are binding on this court and the available case law reveals a difference of opinion on this issue.

The defendants also assert that this case presents a new context due to the presence of "potential special factors" that were never considered in Carlson. Doc. No. 33-1 at 8. Specifically, the defendants argue:

> because Plaintiff's complaint focuses on treatment of chronic conditions and not a life-threatening emergency, his alleged injury was amenable to redress under the [Bureau of Prisons'] Administrative Remedy Program ("ARP"), see 28 C.F.R. § 542.10 et seq., and injunctive relief in a way that the injury in Carlson was not. This "potential special factor" is sufficient to render this case as a "new" Bivens context. If that were not enough, when Carlson was decided in 1980, Congress had not passed the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e, which aimed to curb the number of civil claims filed by inmates. The existence of these potential special factors, which Carlson never considered, warrant a full analysis of whether it would offend separation of powers principles to authorize the type of Bivens claim that Plaintiff proposes here. See Egbert, 142 S. Ct. at 1808.

Id. at 8-9.

This court concludes that the asserted presence of "special factors" should await further development of the facts. As an initial matter, it is not clear that the existence of a chronic medical condition like Waltermeyer's degenerative bone disease places his claim in a new context. Carlson "involve[d] claims regarding officials' long-term failure to provide appropriate treatment, in addition to claims relating to the emergency that led to the prisoner's death." Feao v. Ponce, No. CV 20-06016 DMG (KSx), 2023 U.S. Dist. LEXIS 37263, at *43 n.13, 2023 WL 3213553, at *12 n.13 (C.D. Cal. Mar. 3, 2023). See also Carlson, 446 U.S. at 16 n.1, 10 (describing allegations against federal prison officials for, *inter alia*, failure to provide adequate medical care for inmate's chronic asthmatic condition). Therefore, this court finds that the chronic nature of the plaintiff's condition is not sufficient at this stage to bar his claims for damages, and that the issue should be revisited at a later point in the proceedings. See Hammack v. Schneider, No. 19-cv-00230-JPG, 2023 U.S. Dist. LEXIS 4483, at *9-10, 2023 WL 143312, at *3 (S.D. Ill. Jan. 10, 2023) (denying defendants' motion for judgment on the pleadings based on finding that federal inmate's Eighth

Amendment claim for denial of medical care for Dupuytren's Contracture, which resulted in loss of use of his left hand, was "nearly indistinguishable from *Carlson*").

The defendants' arguments regarding the ARP, injunctive relief and the PLRA do not alter this court's conclusion. As indicated above, the relevant authority demonstrates that alternative remedies may constitute "special factors" that preclude courts from recognizing a new Bivens remedy. See Quinones-Pimentel, 85 F.4th at 70 (explaining that special factors, for purposes of step two of the Bivens analysis, include alternative remedial structures that provide would-be Bivens plaintiffs a means of redressing constitutional violations). What is less clear, however, is whether, in the wake of Egbert, courts must consider such remedies in connection with the new context inquiry at the first step of the two-step Bivens analysis or whether consideration of such remedies is reserved for the "special factors" analysis at step two. Prior to Egbert, the Supreme Court described the "special factors" analysis as a step that is taken if the court determines that a claim arises in a new context. See Hernandez, 589 U.S.---, 140 S. Ct. at 743 ("When we find that a claim arises in a new context, we proceed to the second step and ask whether there are any special factors that counsel hesitation about granting the extension" of Bivens (internal quotations and punctuation omitted)). In Egbert, however, the Supreme Court stated that "a new context arises when there are 'potential special factors that previous *Bivens* cases did not consider.'" Egbert, 596 U.S. at 492 (quoting Ziglar, 582 U.S. at 140). Nevertheless, the Supreme Court went on to state in Egbert that the existence of alternative remedies precludes courts from inferring *new* Bivens claims. See id. at 493 ("If there are alternative remedial structures in place, that alone, like any special factor, is reason enough to limit the power of the Judiciary to infer a *new Bivens* cause of action." (emphasis added; quotations and citation omitted)). Consequently, it is not clear whether

the possibility of alternative remedies would defeat a deliberate indifference claim that is not otherwise meaningfully different from Carlson.

Since Egbert, courts within the First Circuit have disagreed on whether it is necessary to consider the existence of alternative remedies where the claims at issue do not otherwise present a new context. Two different judges in the District of Massachusetts have held that "the Court need not consider alternative remedial structures" where the plaintiff's claim did not present a new Bivens context. See Kennedy v. Massachusetts, 643 F. Supp. 3d 253, 259 (D. Mass. 2022); see also Aaron v. City of Lowell, --- F. Supp. 3d ---, 2023 U.S. Dist. LEXIS 56172, at *41, 2023 WL 2743337, at *16 (D. Mass. Mar. 31, 2023) (following Kennedy). However, in Arias v. Herzon, --- F. Supp. 3d ---, 2023 U.S. Dist. LEXIS 110893, 2023 WL 4204657 (D.N.H. Jun. 27, 2023), the District Judge to whom this case is assigned rejected the reasoning of the Massachusetts courts and held that under both Ziglar and Egbert, "the existence of the alternative remedial scheme is enough to both place the case into a new context at the first step and to prohibit expanding Bivens at the second step." 2023 U.S. Dist. LEXIS 110893, at *15, 2023 WL 4204657, at *5. Notably, the court's decision in Arias occurred in the context of a motion for summary judgment, after the plaintiff had an opportunity to develop the factual record. See 2023 U.S. Dist. LEXIS 110893, at *1, 2023 WL 4204657, at *1. Furthermore, that decision is currently on appeal. Therefore, the question whether the existence of alternative remedies renders a context new at the first step of the Bivens analysis is likely to be addressed directly by the First Circuit in the near future.

Even assuming the defendants are correct, and it is necessary to consider alternative remedies at step one of the Bivens analysis, this court would still recommend that the defendants' motion be denied. To the extent the defendants contend that the possibility of injunctive relief is an alternative remedy that defeats the defendants' claims, their argument is unconvincing. As the

Supreme Court explained in Egbert, "a court may not fashion a *Bivens* remedy if *Congress* already has provided, or has authorized *the Executive* to provide, 'an alternative remedial structure.'" Egbert, 596 U.S. at 493 (emphasis added) (quoting Ziglar, 582 U.S. at 137). Here, however, there is no indication that Congress or the Executive, as opposed to the courts, has created an injunctive remedy for claims of inadequate medical care in prison.[5]

With respect to the defendants' argument that the ARP and the PLRA are special factors that place Waltermeyer's claims in a new context and warrant their dismissal based on separation of powers principles, some of the case law indicates otherwise. As the Eastern District of Michigan reasoned when faced with a similar argument:

> [The defendant] points to the availability of the [ARP] as a special factor. The availability of alternative remedies is a special factor that could caution hesitation in allowing a *Bivens* action. Egbert, 142 S. Ct. at 1806. "So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." Id. at 1807. But the opposite may occur if the Court does not allow a *Bivens* remedy here. *Carlson* has been the law of the land since 1980. In 1995, Congress enacted the [PLRA]. And though perhaps, as [the defendant] points out, a purpose of that Act was to limit litigation brought by incarcerated persons, that Act did not purport to eliminate or amend the cause of action provided by *Carlson*. Instead, the PLRA requires exhaustion, which for claims brought against federal officials means satisfying the ARP. So it appears that the remedial process that Congress found "sufficient to secure an adequate level of deterrence" was a two-step process where an incarcerated person first satisfies the ARP and then brings a *Carlson*-type claim in federal court. Nothing in Congress' actions seems to suggest that the ARP was meant to replace the cause of action found in *Carlson*. And the history of the PLRA litigation teaches that administrative remedies alone are not sufficient to address medical indifference by prison officials. In other words, *Carlson* is part of the "calibration" that Congress struck, and the Court will not disrupt that.

---

[5] The record in this case demonstrates that Waltermeyer attempted to obtain injunctive relief against the defendants but that no such remedy was available. Specifically, the record shows that at the time he filed this action in March 2019, Waltermeyer was seeking a preliminary injunction compelling the defendants to provide him with adequate medical care. Doc. No. 1. However, on July 25, 2019, he was transferred out of FCI Berlin and sent to a federal facility in Florida. See Doc. No. 32 at 7. As a result of his transfer, the court denied Waltermeyer's request for injunctive relief as moot. See Docket Entry dated 11/27/2019, Doc. No. 19. It was only then that Waltermeyer amended his complaint to seek money damages against the defendants under Bivens. See Doc. No. 20.

Foreman, 2023 U.S. Dist. LEXIS 24876, at *11-12, 2023 WL 1991561, at *4. For this reason as well, this court recommends that the question whether the existence of alternative remedies places Waltermeyer's claims in a new context be resolved at a later point in the litigation.

The defendants point to other "special factors" that, according to the defendants, show that Congress is better suited than the Judiciary to authorize a damages remedy in cases such as this one, and which support a ruling in their favor on the motion to dismiss. See Doc. No. 33-1 at 9-13. First, the defendants argue that "Congress is better positioned to create remedies in the context of chronic medical care in federal prisons." Id. at 9-10 (quoting Washington v. Fed. Bureau of Prisons, No. 5:16-3913-BHH, 2022 U.S. Dist. LEXIS 154996, at *16, 2022 WL 3701577, at *6 (D.S.C. Aug. 26, 2022)). Thus, the defendants maintain that medical care for chronic conditions "is a specialized activity requiring a high degree of training and qualification[,]" and "the provision of such care is made all the more multifaceted because it must coincide with the security demands and inherent limitations of the custody setting." Id. at 10 (quoting Washington, 2022 U.S. Dist. LEXIS 154996, at *16, 2022 WL 3701577, at *6). As stated above, however, Carlson included "claims regarding officials' long-term failure to provide appropriate treatment" in the prison context. Feao, 2023 U.S. Dist. LEXIS 37263, at *43 n.13, 2023 WL 3213553, at *12 n.13. Therefore, the defendants have not shown that Waltermeyer's claims should be dismissed on this basis.

The defendants also argue that the FTCA provides an alternative means by which inmates can seek damages from the United States for past harm relating to inadequate medical care. Doc. No. 33-1 at 11. This argument too is unpersuasive. In Carlson, the Supreme Court held that the FTCA is not a substitute for a Bivens remedy and that Congress "views FTCA and *Bivens* as parallel, complementary causes of action[.]" Carlson, 446 U.S. at 19-20. It is therefore not a

"special factor[] that previous *Bivens* cases did not consider" and does not defeat the plaintiff's cause of action in this case. Egbert, 596 U.S. at 492 (quoting Ziglar, 582 U.S. at 140).

The defendants further point to internal government processes for reporting employee misconduct, including mechanisms for reporting "waste, fraud, abuse, and corruption," and "serious administrative misconduct" by fellow employees, as well as internal Bureau of Prisons ("BOP") policies aimed at improving health care in BOP institutions. Doc. No. 33-1 at 11-12. However, there is no indication that Waltermeyer's claims against Hazelwood and Kistler concern any waste, fraud, abuse, corruption or administrative misconduct that would trigger the use of such processes or result in any discipline for failure to provide adequate medical treatment. Nor is there any indication that those processes could be initiated by prisoners such as Waltermeyer, or any explanation as to how they would provide prisoners with a remedy. Therefore, the defendants have not shown that such policies provide alternative remedies or amount to "special factors" that defeat Waltermeyer's claims. See Foreman, 2023 U.S. Dist. LEXIS 24876, at *11, *13, 2023 WL 1991561, at *4-5 (rejecting defendant's argument that such internal processes provide alternative remedies or amount to a "special factor that could caution hesitation in allowing a *Bivens* action."). "And policies that are geared toward ensuring a certain level of healthcare in prisons cannot be described as 'deterring the unconstitutional acts of individual officers'" such that they would preclude a Bivens remedy. Id. at *13, 2023 WL 1991561, at *5 (quoting Egbert, 596 U.S. at 498). Accordingly, these arguments do not support a ruling in the defendants' favor on their motion to dismiss.

Finally, the defendants urge this court to find that Congress' frequent and intensive legislation regarding the rights and protections of incarcerated people, including its passage of the PLRA and legislation aimed at providing adequate medical care to inmates, is a special factor that

supports the dismissal of Waltermeyer's claims. Doc. No. 33-1 at 12-13. Specifically, the defendants argue that despite having ample opportunities to authorize a Bivens claim when legislating on these matters, Congress has always declined to establish such a remedy. Id. at 13. According to the defendants, "[t]his suggests that it would be inappropriate for this Court to act in Congress's place by implying a remedy." Id. (quoting Washington, 2022 U.S. Dist. LEXIS 154996, at *21, 2022 WL 3701577, at *7). However, as the Foreman court stated when faced with an identical argument:

> Congress has legislated in this area with the backdrop of *Carlson* and the cause of action it provides. So Congress' silence does not have the same implication as it may have had if no such *Bivens* action already existed. And given the exhaustion requirement of the PLRA, it seems equally, if not more, likely that Congress considered *Carlson* as it legislated in this area.

2023 U.S. Dist. LEXIS 24876, at *14, 2023 WL 1991561, at *5. This court finds this reasoning persuasive. Accordingly, it recommends that the motion to dismiss be denied.

## CONCLUSION

For all the reasons described herein, this court recommends that the "Defendants' Motion to Dismiss" (Doc. No. 33) be DENIED without prejudice to the defendants' ability to raise their arguments again at a later point in the litigation.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The fourteen-day period may be extended upon motion. Failure to file any objection within the specified time waives the right to appeal the district court's Order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016). Only those issues raised in the objection(s) to this Report and Recommendation "are subject to review in the district court" and any issues "not preserved by such objection are precluded on

appeal." Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010) (quoting Keating v. Sec'y of Health & Hum. Servs., 848 F.2d 271, 275 (1st Cir. 1988)).

                                                                                _____
                                                                                Andrea K. Johnstone
                                                                                United States Magistrate Judge

December 28, 2023

cc:       Broc T. Waltermeyer, pro se
           Counsel of Record