UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

BROC T. WALTERMEYER, )
 )
    Plaintiff, )
 )
v. ) Civil No. 19-cv-233-LM
 )
ROBERT HAZLEWOOD, Warden, and )
DIANE L. KISTLER, Health Services Doctor, )
 )
    Defendants. )

MEMORANDUM IN SUPPORT OF DEFENDANTS' OBJECTION
TO REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS

I.    INTRODUCTION.

On May 15, 2023, Defendants Robert Hazlewood and Diane Kistler filed a motion to dismiss this individual-capacity action because special factors counsel against extending *Bivens* into this new context. DN 33. On June 23, 2023, Plaintiff objected to the motion. DN 36. Defendants replied to the objection on June 30, 2023. DN 37.

On December 28, 2023, the Magistrate Judge issued a Report and Recommendation (R&R) that the defendants' motion to dismiss be denied without prejudice to the defendants' ability to raise their arguments later in the litigation. DN 38. For the following reasons, Defendants object to the R&R and respectfully request that the Court deny the Magistrate's recommendation and dismiss the case.

II.    THE REPORT AND RECOMMENDATION IS FLAWED.

    A.    The Report and Recommendation Cites the Wrong New Context Standard.

As set forth in Defendants' motion to dismiss, Plaintiff's *Bivens* claim presents a new context because it diverges factually from the Supreme Court's three *Bivens* cases and because it

raises special factors that the Court has not considered in the past. *See* DN 33-1. The R&R, however, applies the wrong new context standard.

As the Supreme Court explained in *Ziglar v. Abbasi*, the "proper test for determining whether a case presents a new *Bivens* context" asks whether "the case is different in a *meaningful way* from previous *Bivens* cases decided by [the Supreme] Court[.]" 582 U.S. 120, 139 (2017) (emphasis added). Importantly, a case can present a new context even if it alleges the same Constitutional right and mechanism of injury as alleged in previous *Bivens* cases. *Id.* at 138-139. Indeed, in *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61 (2001), the Supreme Court declined to authorize a claim for medical deliberate indifference brought by an inmate who alleged the same Constitutional right (Eighth Amendment freedom from cruel and unusual punishment) and mechanism of injury (failure to provide adequate medical treatment) as did the plaintiff in *Carlson v. Green*, 446 U.S. 14 (1980). *See Abbasi*, 582 U.S. at 138-39; *see also Nellson v. Doe*, No. 21-6206, 2023 WL 3336689, at *4 (4th Cir. May 10, 1023) ("Even claims alleging deliberate indifference to an inmate's medical needs, though they 'involve the same right and mechanism of injury as in *Carlson*,' may 'still present different contexts.'") (quoting *Abbasi*, 582 U.S. at 139)). Such "superficial similarities are not enough to support the judicial creation of a cause of action." *Egbert v. Boule*, 596 U.S. 482, 495 (2022). The R&R ignores the Supreme Court's rule that a case does not arise in a recognized *Bivens* context simply because it involves the same constitutional right and mechanism of injury by citing an Eighth Amendment deliberate medical indifference claim as a recognized *Bivens* context standard in at least three places. *See* DN 38 at 9, 11-12. Relatedly, although the R&R states that there is no binding authority finding a new context in a non-life threatening and non-emergency medical situation such as we have in this case, the R&R fails to cite any binding authority for the proposition that this is <u>not</u> a new context.

2

But this too disregards the legal standard: the question is not whether other courts have held that a certain scenario presents a new context, but rather whether a particular case differs in a "meaningful way" from *Bivens*, *Davis*, or *Carlson*. *Abbasi*, 582 U.S. at 139.

As set forth in defendants' motion to dismiss and below, this case is meaningfully different from *Carlson* in several important ways. Because Plaintiff's *Bivens* claim presents a new context, the recommendation to deny dismissal is flawed, and the Court should decline to follow it.

### B. *Bivens* Claims Involving Routine, Non-Emergency Medical Care Arise in a New Context.

The R&R incorrectly concludes that the context presented in this case is not meaningfully different from that presented in *Carlson*. DN 38 at 9. "[A] plaintiff cannot justify a *Bivens* extension based on 'parallel circumstances' with … *Carlson* unless he also satisfies the 'analytic framework' prescribed by the last four decades of intervening case law." *Egbert v. Boule*, 596 U.S. at 501 (internal citation omitted). That the Supreme Court authorized a cause of action in *Carlson* "carries little weight" because it predates the Court's current approach. *Id.* at 500-01. Even if differences between a case and *Carlson* are "perhaps small, at least in practical terms," the new context inquiry is "easily satisfied." *Abbasi*, 582 U.S. at 147-49 ("Yet even a modest extension is still an extension."). Here, the lack of a life-threatening emergency presents a new context for several reasons.

First, non-emergency or routine medical care cases carry far more "risk of disruptive intrusion by the Judiciary into the functioning of" the Executive Branch, *Abbasi*, 582 U.S. at 140, which operates the federal prison system. *See Thomas v. Carmichael*, No. 2:21-cv-00160-JRS-MKK, 2023 WL 5116599, at *10 (S.D. Ind. July 24, 2023) (holding new context because "this case does not involve responses to emergency medical situations, which might alter the policy

3

balance that led the *Carlson* Court to justify a *Bivens* remedy because non-emergency situations are presumably more common" (footnote omitted)). Because such claims are far more "common" than the kind of emergency, life-threatening situation that justified a remedy in *Carlson*, this difference is meaningful. *See Egbert*, 596 U.S. at 500 (noting "common" claims are "more likely to impose 'a significant expansion of Government liability,'" and "counsels against permitting *Bivens* relief" (quoting *F.D.I.C. v. Meyer*, 510 U.S. 471, 486 (1994)). Likely recognizing the importance of *Carlson*'s particular context, the First Circuit has characterized *Carlson* as a *Bivens* claim for "fail[ure] to provide adequate medical treatment …, *resulting in death*." *Quinones-Pimentel v. Cannon*, 85 F.4th 63, 69 (1st Cir. 2023) (emphasis added).

Second, the "extent of judicial guidance as to how an officer should respond" here is far different from the medical "emergency" officials faced in *Carlson*. *Abbasi*, 582 U.S. at 140. This difference is akin to "a qualified-immunity defense." *Id.* at 177 (Breyer, J., dissenting). A case may arise in a new context because the "judicial guidance . . . was less developed" or the legal "standard . . . is less clear." *Id.* at 148. Indeed, *Abbasi* held that a detainee's abuse claim was a new context from *Carlson*, even though the parties agreed, and the court assumed, that a similar deliberate indifference "standard" applied. *Abbasi*, 582 U.S. at 146-48. Here, judicial guidance governing non-emergency medical care for non-life-threatening conditions is far "less clear," *id.* at 148, than the context of *Carlson*, where it should have been "obvious" how officials needed to respond. *Cf. Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (noting qualified immunity can be overcome where it is "obvious" that particular conduct violates the Constitution). Implying a remedy in the context of chronic ailments presents a far greater risk of disruptive intrusion by the judiciary into the functioning of prisons, and for which the extent of legal guidance how an officer should respond was different from the medical emergency in *Carlson*.

4

Third, the non-emergency context of this case is meaningful because "potential special factors that [*Carlson*] did not consider" are present here. *Abbasi*, 582 U.S. at 140; *cf. Snowden v. Henning*, 72 F.4th 237, 244 (7th Cir. 2023) ("If a case involves facts or legal issues that would require reweighing the costs and benefits of a damages remedy … then the difference is 'meaningful' …."). The R&R claims that alternative remedial structures are not relevant to the new context inquiry. DN 38 at 13-14. This is incorrect. The Supreme Court repeatedly has said (and held) that the presence of "potential" special factors makes a new context. *See Egbert*, 596 U.S. at 492 (quoting *Abbasi*, 582 U.S. at 140; *Abbasi*, 582 U.S. at 148-49 (holding Congressional action an inaction since *Carlson* in the form of the PLRA and the availability of alternative remedies were "features … not considered in the Court's previous *Bivens* cases")). Indeed, it is for these reasons that the new context and special factors inquiries "often" resolve to a single question. *Egbert*, 596 U.S. at 492. Congressional action after *Carlson*, through legislation like the PLRA, which "does not provide for a standalone damages remedy against federal jailers," "suggests Congress chose not to extend … *Carlson* … to cases involving other types of prisoner mistreatment." *Abbasi*, 582 U.S. at 149. Relatedly, there are other alternative existing remedies outside the life-threatening medical emergency context, such as through an action for injunctive or other relief and BOP's Administrative Remedy Program ("ARP"). The inmate in *Carlson* – who died within hours – did not have the same opportunity to seek injunctive or other relief through the BOP's ARP. Because these alternative remedial structures were not available or considered in *Carlson*'s medical emergency context, they are potential special factors that the *Carlson* court did not consider. For this reason, claims involving routine, non-emergency medical care present a new context.

Where, as here, alternative processes exist, courts should not engage in the "disfavored" and fundamentally "legislative endeavor" of creating a cause of action out of respect for the remedies put in place by the political branches. *Egbert*, 596 U.S. at 491; *id.* at 498 ("So long as *Congress or the Executive* has created a remedial process that *it* finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy.'" (emphasis added)). Recognizing these arguments, numerous district courts have found that prisoner medical care claims can present new contexts. *E.g.*, *Debenedetto v Salas*, No. 13-cv-07604, 2023 WL 6388127, at *7 & n.5 (N.D. Ill. Sept. 29, 2023) (finding inmate's claims related to mental health deterioration and broken toe arose in new context partly because *Carlson* did not consider the existence of alternative remedies or the absence of a standalone damages remedy in the PLRA); *Thomas*, 2023 WL 5116599, at *10 (noting BOP's ARP and suit for injunctive relief were potential special factors not previously considered in *Carlson*); *Anderson v. Ruda*, Case No. EDCV 20-2673-JLS (JEM), 2023 WL 4188213, at *6 (C.D. Cal. Apr. 3, 2023) (finding "the existence of" BOP's ARP was a "factor . . . not considered by the Court in *Carlson*"), *R. & R. adopted*, 2023 WL 4181258 (C.D. Cal. June 26, 2023); *Norton v. Kwon*, Civ No. 22-00109 LEK-RT, 2023 WL 3042281, at *6 (D. Haw. Apr. 21, 2023) ("Because [BOP's ARP] was not considered by the Court in *Carlson*, this is another reason that Norton's claims arise in a new context."); *White v. Derr*, Civ. No. 22-00159 JMS-RT, 2023 WL 2588013, at *6 (D. Haw. Mar. 21, 2023) (same); *Stine v. Merrell*, CV-21-00422-TUC-DCB, 2023 WL 3190798, at *4 (D. Ariz. Apr. 28, 2023) ("Neither of these special factors were considered in *Carlson* . . . [so] this case arises in a 'new context.'").

Indeed, it is the availability of such alternative remedies that are part of what make the factual differences here meaningful and, ultimately, counsel against implying a *Bivens* remedy.

6

The availability of alternative relief has been a chief separation of powers concern since the creation of the *Bivens* remedy and, under the Court's current framework, holds pride of place among the Court's considerations. *See Abbasi*, 582 U.S. at 140 ("It is of central importance, too, that this is not a case like *Bivens* or *Davis* in which 'it is damages or nothing.'").

      C.      <u>The R&R Improperly Assesses Whether Alternative Remedial Schemes are Adequate</u>.

In a similar vein, the R&R erroneously dismisses alternative remedial structures as inadequate or unavailable. *See* DN 38 at 15-17. This is not the correct standard. "[T]he absence of [full or complete] relief 'does not by any means necessarily imply that courts should award money damages." *Egbert*, 596 U.S. at 501 (quoting *Schweiker v. Chilicky*, 487 U.S. 412, 421 (1988)). "[T]he question whether a given remedy is adequate is a legislative determination that must be left to Congress, not the federal court." *Id.* at 498. Courts must "defer" to *both* congressional action and "'congressional inaction' if 'the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms.'" *Id.* at 501 (quoting *Schweiker*, 487 U.S. at 423). This means "[a] court should *not* inquire … whether *Bivens* relief is appropriate in light of the balance of the circumstances in the particular case." *Id.* at 496 (emphasis added) (internal quotation omitted). The mere existence of an alternative remedial scheme means a court may not imply a new *Bivens* action. *Id.* at 498 ("So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy.").

      D.      <u>The R&R Mischaracterizes the Purview of DOJ and BOP Investigations</u>.

The R&R states that because Plaintiff's claims against Defendants do not involve waste, fraud, abuse, corruption or administrative misconduct, there is no alternative remedy available to

7

Plaintiff. DN 38 at 17. However, the R&R underestimates the scope of DOJ and BOP investigations, which results in an inappropriate evaluation of the adequacy of the remedies available to Plaintiff here.

First, many courts have said that the ability to complain to an OIG, or a similar office in a federal agency, is among factors that foreclose a *Bivens* remedy after *Egbert*. *See, e.g.*, *Hower v. Damron*, No. 21-5996, 2022 WL 16578864, at *3 (6th Cir. Aug. 31, 2022) ("Even if . . . the BOP's grievance process is not enough to deter . . . misconduct, 'the threat of an investigation through the BOP's Internal Affairs Office or [DOJ-OIG] may also serve to deter misconduct,' as aptly noted by the district court."); *Massaquoi v. FBI*, No. 22-55448, 2023 WL 5426738, at *2 (9th Cir. Aug. 23, 2023) (declining a *Bivens* remedy for Fourth Amendment claims against FBI agents who searched a plaintiff's home pursuant to a warrant and noting "[u]nder Department of Justice regulations implemented pursuant to Congress's statutory mandate, [plaintiff] may report non-frivolous allegations of misconduct to the Department's [OIG], which may investigate the allegations or refer them for investigation by another department," and that "[w]e have held that similar OIG procedures are adequate alternative remedies for *Bivens* purposes" (citing 5 U.S.C. § 413(b)(2), (d); 28 C.F.R. §§ 0.29c(d), 0.29h)); *Jackson v. McNeil*, No. 20-35991, 2023 WL 3092302, at *1 (9th Cir. Apr. 26, 2023) (declining *Bivens* remedy against FBI agent arising from post-arrest asset forfeiture proceedings and noting DOJ-OIG may "investigate" misconduct allegations); *Pettibone v. Russell*, 59 F.4th 449, 456 (9th Cir. 2023) ("Aggrieved parties can report any alleged misconduct to the Inspector General of [DHS], who must either investigate or refer the matter to the [agency's] Officer for Civil Rights and Civil Liberties."); *Cain v. Rinehart*, No. 22-1893, 2023 WL 6439438, at *4 (6th Cir. July 25, 2023) (recognizing the existence of Inspectors General as an alternative process "that preclude a *Bivens* claim" in the context of U.S.

8

Marshals); *Jones v. Hurley*, Civil Action No. 6:22-130-DCR, 2023 WL 1452049, at *5 (E.D. Ky. Feb. 1, 2023) (noting that investigation by BOP's OIA or DOJ OIG "may serve to deter misconduct" and counselled against a *Bivens* remedy for excessive force and deliberate indifference claims arising from a torn quadricep after a prison fight).

Second, in general, complaints of "criminal misconduct" by BOP staff are usually referred to OIG, *see* 28 C.F.R. § 45.11, which, upon review of the allegations, either itself investigates or if the matter is not criminal but one for which discipline can be warranted, refers the matter to OIA for an investigation (where warranted, OIA can further delegate an investigation of a matter to an institution's SIS Office). Indeed, inmates can file grievances directly with OIG through its "online complaint hotline." The R&R suggests that complaints about healthcare misconduct to OIG/OIA would not be within those offices purviews as not constituting waste, fraud, or abuse. That is wrong. Indeed, a condition of employment for BOP medical staff is that they maintain a "current licensure" or certification, and the agency has policies that establish guidelines "for corrective action . . . related to deficient clinical skills, knowledge, or practice[.]" BOP Program Statement 6010.05, *Health Services Administration*, at 9 (June 26, 2014), *available at* https://www.bop.gov/policy/progstat/6010_005.pdf; BOP Program Statement 6027.02, *Health Care Provider Credential Verification, Privileges, and Practice Agreement Program*, at 1 (Oct. 12, 2016), *available at* https://www.bop.gov/policy/progstat/6027_002.pdf. Clearly, then, OIA can discipline BOP healthcare providers for deficient clinical practice, and if those providers' conduct rises to the level of a criminal infraction, OIG can investigate, and DOJ can prosecute. Recent headlines show that the threat of a criminal investigation or discipline is real – and encompasses a medical provider's failure to adequately treat an inmate's healthcare concerns. *See, e.g.*, U.S. Dep't of Justice, Office of

9

Public Affairs, *Two Federal Bureau of Prisons Employees Charged with Violating the Civil Rights of an Inmate Resulting in His Death*, justice.gov (June 7, 2023), *available at* [https://www.justice.gov/opa/pr/two-federal-bureau-prisons-employees-charged-violating-civil-rights-inmate-resulting-his](https://www.justice.gov/opa/pr/two-federal-bureau-prisons-employees-charged-violating-civil-rights-inmate-resulting-his); Press Release, U.S. Attorney's Office, Western District of Wisconsin, *Former Federal Prison Employee Sentenced for Providing Prohibited Items to Inmate* (Feb. 23, 2017), *available at* [https://www.justice.gov/usao-wdwi/pr/former-federal-prison-employee-sentenced-providing-prohibited-items-inmate](https://www.justice.gov/usao-wdwi/pr/former-federal-prison-employee-sentenced-providing-prohibited-items-inmate); Press Release, U.S. Attorney's Office, Western District of Wisconsin, *Former Federal Prison Employee Sentenced for Public Corruption Crimes*, (June 8, 2017), *available at* [https://www.justice.gov/usao-wdwi/pr/former-federal-prison-employee-sentenced-public-corruption-crimes](https://www.justice.gov/usao-wdwi/pr/former-federal-prison-employee-sentenced-public-corruption-crimes). These alternative remedial measures show why *Bivens* relief should not be afforded to Plaintiff here.

E. <u>Resolution of a *Bivens* Question Need Not Await Summary Judgment</u>.

Finally, the R&R was wrong in concluding that resolution of the *Bivens* question was not appropriate at this stage of the proceedings. Further discovery is not needed to resolve the new context inquiry and will not change the fact that Plaintiff's case – unlike *Carlson* – did not involve a life-threatening medical emergency. Moreover, many *Bivens* cases, including *Abbasi* itself, have been decided at the motion to dismiss stage. "[R]ecognizing a *Bivens* cause of action is an extraordinary act that places great stress on the separation of powers … ." *Egbert*, 596 U.S. at 498 n.3 (internal citation omitted). Because of this, courts "have 'a concomitant responsibility' to evaluate any grounds that counsel against *Bivens* relief[.]" *Id.* The Supreme Court has frequently considered the existence of a *Bivens* cause of action to be an "antecedent" or threshold issue that may be decided before qualified immunity. *Wilkie v. Robbins*, 551 U.S. 537, 553 (2007); *Hernandez v. Mesa*, 140 S. Ct. 735 (2020). Allowing the case to go forward

into discovery when it is plain from Plaintiff's allegations that his claims arise in a new context would strain the separation of powers. The R&R notes that this Court's recent decision declining to extend a *Bivens* remedy in *Arias v. Herzon*, Civil No. 17-cv-516-LM, ___ F. Supp. 3d ___, 2023 U.S. Dist. LEXIS 110893, 2023 WL 4204657 (D.N.H. June 27, 2023), occurred in the context of a motion for summary judgment, after the plaintiff had an opportunity to develop the factual record. DN 38 at 14. The reason that case was decided after the development of the factual record, however, was simply because *Egbert* was decided by the U.S. Supreme Court five years after Arias filed his initial complaint. Because there was a significant change in the law, *Arias* is inapposite. Discovery is not needed in this case, and the Court should decline to adopt the R&R.

III. <u>CONCLUSION</u>.

For these reasons, as well as those set forth in the memorandum in support of the motion to dismiss, DN 33-1, the Court should decline to adopt the Report and Recommendation and dismiss this case.

                                                 Respectfully submitted,

                                                 JANE E. YOUNG
                                                 United States Attorney

                                               By: /s/ Michael McCormack
                                               Michael McCormack
                                               Assistant U.S. Attorney, NH Bar No. 16470
                                               U.S. Attorney's Office
                                               53 Pleasant Street
                                               Concord, NH 03301
                                               (603) 225-1552
Dated: February 1, 2024                     michael.mccormack2@usdoj.gov